DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Stephen Bain, appeals from the decision of the Summit County Domestic Relations Court. This Court reverses in part and affirms in part.
 I. {¶ 2} Appellant and Appellee, Mary McFadden, became involved in a relationship which resulted in the birth of a child, M.B., born November 1, 1997. The parties never married and never resided together. Both parties acknowledged parentage and Appellee became the residential parent. On November 10, 1999, the parties entered into a Shared Parenting Plan and a Confidential Settlement Agreement (collectively referred to herein as "Agreement"). The Agreement was accepted and made the order of the Juvenile Court on February 28, 2000.
 {¶ 3} Around the time the parties met, Appellant had recently retired from a business he co-owned with his brother. Appellant and his brother sold their business in the mid-1990's. The sale of the business provided Appellant with sufficient assets to effectively retire. Appellant estimated that his investments would provide income of $250,000 or more per year. Appellant is currently unemployed.
 {¶ 4} Appellee worked intermittently as an exotic dancer. Appellant contends that Appellee has earned a yearly income of between $75,000 and $125,000 through her work as an exotic dancer. Appellee denies ever earning that much income. She does not have any college education and is currently pursuing a career in court reporting.
 {¶ 5} Pursuant to the parties' Agreement, Appellant purchased a home in Hudson for Appellee and their child, as well as a Jaguar automobile. The parties agreed to a fair market value of $180,000 for the home and $25,000 for the vehicle. Pursuant to the Agreement, Appellant received credit toward any future child support of $1500 per month for the house and $200 per month for the vehicle. In addition, Appellant agreed to pay Appellee $2500 per month in support. Thus, Appellant's child support payments totaled $4500 per month. The Agreement additionally provided that Appellant would not seek modification of the child support order under any condition prior to April 1, 2001. The Agreement further stated that after April 1, 2001, any modification would be based on the adjusted gross income of the parties as shown on their prior year IRS form 1040 and that Appellant could not initiate a modification unless his gross income for the year fell below $300,000.
 {¶ 6} In July of 2000, this case was transferred from the Juvenile Division to the Domestic Relations Division. On December 3, 2004, Appellant filed a motion to modify his child support obligation, asserting that the child support should be recalculated to the parties' present income levels. Appellant specifically contended that the $1500 per month and $200 per month payments should be sufficient support payments and requested that the monthly payments of $2500 be terminated.
 {¶ 7} On January 14, 2005 and April 29, 2005, the magistrate held hearings regarding Appellant's motion. Both parties testified. On May 10, 2005, the magistrate issued her decision modifying Appellant's support obligations from $2500 per month to $945.88 per month. On May 16, 2005, the trial court adopted the magistrate's decision and made it the order of the trial court. Appellant timely filed objections to the magistrate's decision. The trial court overruled Appellant's objections on September 6, 2005 and ordered that, effective December 3, 2004, Appellant pay $964.80 per month. Appellant timely appealed that decision, raising two assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN FAILING TO CREDIT APPELLANT WITH THE FULL AMOUNT OF HIS PREPAID CHILD SUPPORT."
 {¶ 8} In Appellant's first assignment of error, he contends that the trial court erred in failing to credit him with the full amount of his prepaid child support ($1700 per month). We agree.
 {¶ 9} We review matters involving child support under the abuse of discretion standard. Keller v. Keller, 9th Dist. No. 04CA0084, 2005-Ohio-3302, at ¶ 7. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 10} "When modifying an existing child support order, a trial court must find that a change of circumstances has occurred." Farmer v. Farmer, 9th Dist. No. 03CA0115-M,2004-Ohio-4449, at ¶ 10. In order to determine whether or not a change of circumstances has occurred, the trial court must complete a new child support worksheet, recalculating the amount of support required based on the new figures. R.C. 3119.79(A);Farmer, supra; Julian v. Julian, 9th Dist. No. 21616,2004-Ohio-1430, at ¶ 5.[1] A change of circumstances is found if the recalculated amount is more than ten percent less or greater than the amount previously required as child support. R.C. 3119.79(A); Farmer, supra, at ¶ 10; Swank v. Swank, 9th Dist. No. 21207, 2003-Ohio-720, at ¶ 12. "The appropriate method for calculating whether the ten-percent requirement has been met is to take the existing child-support worksheet underlying the support order and substitute the parties' new financial information for that contained in the worksheet, employing the same calculations as those used for the original order." (Quotation omitted). Farmer, supra, at ¶ 10.
 {¶ 11} The Juvenile Court adopted the parties' Agreement on February 28, 2000. Pursuant to the Agreement, the expenditures Appellant made for the house ($1500) and car ($200) must be considered the first and second sums paid for child support. As such, this $1700 amount must be deducted from Appellant's child support obligation first. Consequently, if the trial court determined that Appellant owed $3000 a month in child support, the court would first deduct the $1700, and his actual payment would total $1300.
 {¶ 12} The trial court completed a new child support worksheet and calculated the support obligation as $1261.17 per month. The court then determined that a modification was required because the revised support calculation was more than ten percent below the existing order. See R.C. 3119.79(A). The court explained that based on the revised amount, Appellant would pay no support because he would receive a $1700 credit for the house and car. The court found awarding no child support was unjust, inappropriate and not in the best interest of the child. Rather than credit Appellant for $1700 per month, the court determined that it was appropriate to reduce the calculated amount by twenty-five percent or $3,783.50 per year, to account for Appellant's provision of the house and the car. After deducting this amount, the court calculated Appellant's net support at $945.88 per month.
 {¶ 13} Appellant contends that the trial court erred by failing to credit him for the full $1700. He contends that the trial court could not alter the parties' Agreement, adopted by the Juvenile Court, that he receive $1700 credit for the purchase of the house and car. However, he acknowledges that the trial court could (1) determine that the child required child support in an amount greater than $1700, (2) credit him with the $1700, and (3) order him to pay the remaining amount. We agree.
 {¶ 14} Pursuant to R.C. 3119.22, the trial court has authority to modify a child support order if it determines that the amount would be unjust or inappropriate and would not be in the child's best interest. While the trial court had authority to modify the child support award so that Appellant had a monthly obligation, instead of no obligation, the trial court had no authority to alter the agreed judgment entry which entitled him to receive a $1700 credit. See Sechler v. Market (Sept. 30, 1997), 10th Dist. Nos. 97APF03-319, 97APF04-535, 97APF03-320, 97APF04-534, at *4.
 {¶ 15} Appellee contends that this Agreement should not be enforced against her because she signed it under duress. However, Appellee has not filed a motion to modify or vacate this judgment entry and it must, therefore, be upheld as a valid agreement of the parties. See Kevdzija v. Kevdzija, 166 Ohio App.3d 276,290, 2006-Ohio-1723, at ¶ 46.
 {¶ 16} Furthermore, the trial court lacked authority to arbitrarily reduce the calculated amount by twenty-five percent to compensate Appellant for his provision of the home in Hudson. The parties already had a valid judgment entry that accounted for this amount. We find that the trial court's failure to credit Appellant for the full $1700 was an abuse of discretion. Consequently, Appellant's first assignment of error is sustained.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN ITS CALCULATION OF CHILD SUPPORT."
 {¶ 17} In his second assignment of error, Appellant contends that the trial court erred in calculating his child support obligation. More specifically, Appellant contends that the trial court erred in imputing income to him of $150,000 per year. We disagree.
 {¶ 18} As stated above, this Court reviews matters involving child support under an abuse of discretion standard of review.Keller, supra, at ¶ 7. The trial court may impute income to a parent in child support proceedings only upon first finding that the parent is voluntarily unemployed or underemployed. Marek v.Marek, 158 Ohio App.3d 750, 2004-Ohio-5556, at ¶ 14. Appellant does not challenge the trial court's determination that he was voluntarily unemployed. As such, we will only examine his challenge to the income imputed to him.
 {¶ 19} When determining a reasonable amount of income to impute to an unemployed parent, the trial court is directed to determine what the parent would have earned if fully employed based upon a consideration of the following criteria pursuant to R.C. 3119.01(C)(11)(a):
"(i) The parent's prior employment experience;
"(ii) The parent's education;
"(iii) The parent's physical and mental disabilities, if any;
"(iv) The availability of employment in the geographic area in which the parent resides;
"(v) The prevailing wage and salary levels in the geographic area in which the parent resides;
"(vi) The parent's special skills and training;
"(vii) Whether there is evidence that the parent has the ability to earn the imputed income;
"(viii) The age and special needs of the child for whom child support is being calculated under this section;
"(ix) The parent's increased earning capacity because of experience;
"(x) Any other relevant factor."
 {¶ 20} Appellant contends that there is no support for the trial court's finding that he could earn $150,000 per year in income. He asserts that he has not been in the workforce for ten years and that there was no evidence regarding the current job opportunities in the area. He notes that his income has dropped substantially; his adjusted gross income for 2004 was $2266.
 {¶ 21} Appellant argues that the trial court failed to consider some factors, because no party presented evidence in regard to those factors. Specifically, Appellant argues that there was no evidence presented regarding either (1) the prevailing salary for a person with Appellant's qualifications or (2) job opportunities in the area. Appellant asserts that the only evidence presented was that he had been employed by a company owned by him and his brother and that he made in excess of $100,000 per year.
 {¶ 22} As the party moving for the child support modification, Appellant had the burden of proof to establish how the relevant factors would support a modification of his child support obligation. Jurewicz v. Rice (Nov. 14, 2001), 9th Dist. No. 3190-M, at *2. Appellant failed to present any evidence regarding the factors that he now complains the trial court failed to consider. "The trial court has no obligation to investigate and develop evidence that the parties have failed to present." Keller v. Keller, 9th Dist. No. 04CA0084,2005-Ohio-3302, at ¶ 17. Where, as here, the parties fail to present evidence regarding the factors set forth in R.C.3119.01(C)(11), it is reasonable for the court to determine that such factors are immaterial to a determination of the issues. Id.
 {¶ 23} The trial court considered Appellant's prior employment experience and his job qualifications. R.C.3119.01(C)(11)(a)(i)(ii)(v)(vi). There was no evidence presented to demonstrate that Appellant had any physical or mental disability that prevented him from working. R.C.3119.01(C)(11)(a)(iii). Appellant testified that he was unemployed and that he believed that he could earn $150,000 per year if he chose to work. Specifically, when asked to estimate a fair amount that the court should attribute for his earning ability, Appellant testified:
"A hundred and fifty thousand. A hundred, a hundred and fifty thousand, I guess. It's a hard question to answer."
 {¶ 24} Appellant additionally contends that the trial court erred in imputing only $20,800 to Appellee. He contends that the trial court ignored testimony from Appellee that she earned substantial income from her work as an exotic dancer. A review of the record reflects that Appellee did not provide a figure regarding her income as an exotic dancer. When asked whether her income exceeded $75,000, she replied, "I don't think so." There was no evidence presented at trial that Appellee has ever earned $75,000 a year. In addition, although Appellee obtained a real estate license, she has only briefly worked as a real estate agent. Appellee was enrolled in court reporter school at the time of the hearing.
 {¶ 25} Appellant also contends that the trial court failed to account for Appellee's anticipated income from her interest in a $1.5 million dollar property she owned with a former fiance. Appellee acknowledged that her former fiance deeded her a one half interest in a $1.3 million dollar home in Bath, Ohio. However, she also testified that after she ended the engagement, he paid her $100,000 to remove her name from the deed. Appellee received a net amount of $93,000, after attorney fees were deducted.
 {¶ 26} Appellant additionally contends that the trial court erred in preparing the child support worksheet because it considered figures from the 1999 program. Appellant provides no further support for this contention and has not cited to any portion of the record to support his broad claim that the court erred by using "figures from the 1999 program." See App.R. 16(A)(7). This Court, therefore, is permitted to disregard his argument in its entirety. Loc.R. 7(F). "If an argument exists that can support [Appellant's contentions], it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. No. 18349, at *8.
 {¶ 27} The trial court's decision is reasonable and supported by the record. Consequently, we find no abuse of discretion in the trial court's decision to impute this income to Appellant. Appellant's second assignment of error is overruled.
 III. {¶ 28} Appellant's first assignment of error is sustained. Appellant's second assignment of error is overruled. The judgment of the Summit County Domestic Relations Court is affirmed in part and reversed in part and the cause is remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. Costs taxed equally to the parties.
Slaby, P.J., Carr, J., concur.
[1] The existing support order was computed in 1999, before the statute was amended to cap the basic support table at the $150,000 level. See R.C. 3119.04, effective March 22, 2001. Therefore, the trial court was required to assess modification under the old statute.