DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant/Appellant Ronald E. Baxter ("Mr. Baxter"), appeals from the trial court's April 26, 2005 Journal Entry Post Decree Nunc Pro Tunc ("Final Order"). We affirm.
 {¶ 2} The procedural history of this case is a long one beginning with the parties' divorce by dissolution on May 21, 1996. Thereafter, on December 22, 2000, Plaintiff/Appellee Patricia Collette ("Ms. Collette") filed a Motion to Modify Child Support for the support of the parties' minor child, Michael Baxter, born on October 21, 1984 ("Michael"), on the grounds of changed circumstances. Michael suffered a traumatic brain injury in a bicycle accident in August 1996, [D1] which rendered him by stipulation a disabled child per the standards set forth in Castle v. Castle (1984), 15 Ohio St.3d 279, 473 N.E.2d 803.
 {¶ 3} For nearly two years, the parties vigorously litigated the motion and related issues ultimately having the matter heard by a magistrate on December 9 and 11, 2002. Subsequent to the trial, both parties submitted proposed findings of fact and conclusions of law for consideration by the magistrate. On February 3, 2004, the magistrate issued his decision ("Magistrate's Decision"). Mr. Baxter filed objections to the Magistrate's Decision and Ms. Collette opposed Mr. Baxter's objections. On December 2, 2004 the trial court overruled Mr. Baxter's objections (other than agreeing that Mr. Baxter had preserved the right to challenge Michael's Castle status at a later date) and adopted the findings and relief set forth in the Magistrate's Decision ("Original Order").
 {¶ 4} On January 7, 2005, Mr. Baxter appealed the Original Order to this Court, which we dismissed as being untimely filed. On February 8, 2005, Mr. Baxter filed a Motion for Nunc Pro Tunc Relief asking the trial court to clarify which motions were denied in the Original Order ("Nunc Pro Tunc Motion"). The trial court granted the motion and issued the Final Order on April 26, 2005. The Final Order was identical to the Original Order except for the addition of one sentence, denying all pending motions. On May 18, 2005, Mr. Baxter appealed the Final Order, which this Court dismissed for lack of a final appealable order because the Final Order did not state the amount of the child support arrearage. On December 8, 2005, a hearing was held to determine the child support arrearage, which the Summit County Child Support Enforcement Agency ("CSEA") calculated to be $86,327.74. The trial court issued its order April 14, 2006, finding the arrearage to be $86,327.74. Mr. Baxter timely appealed the Final Order assigning five errors to the Final Order: (1) improper imputation of income; (2) the upward deviation from the child support guidelines for Michael's medical expenses not yet incurred; (3) the upward deviation from the child support guidelines for Michael's extraordinary medical expenses; (4) improperly ordering repayment of the child support arrearage without a hearing; and (5) improperly ordering Mr. Baxter to pay child support to Ms. Collette where Ms. Collette has not been designated the custodial parent.
 Assignment of Error Number One "The trial court erred in imputing income to [Mr. Baxter] and in determining the amount of income imputed to [Mr. Baxter]"
 {¶ 5} Mr. Baxter asserts the trial court imputed income to him of $175,000 per year in contravention of the expert testimony that $75,000 per year was the appropriate figure. The income determination is relative to the calculation of Mr. Baxter's child support obligation.
 {¶ 6} We review matters involving child support under the abuse of discretion standard. Keller v. Keller, 9th Dist. No. 04CA0084,2005-Ohio-3302, at ¶ 7. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621,614 N.E.2d 748.
 {¶ 7} The trial court may impute income to a parent in child support proceedings upon first finding that the parent is voluntarily unemployed or underemployed. Marek v. Marek, 158 Ohio App.3d 750, 2004-Ohio-5556, at ¶ 14. Appellant challenges the trial court's determination that he was underemployed and the amount of income which was imputed to him.
 {¶ 8} Whether or not a parent is underemployed is a question of fact for the trial court. Bender v. Bender (July 18, 2001), 9th Dist. No. 20157, at *3, citing Rock v. Cabral (1993), 67 Ohio St.3d 108, 112. In this case, there is significant competent, credible evidence to support a finding that Mr. Baxter was underemployed. Evidence at trial included expert testimony about the prevailing wage and salary levels in this geographic area and Mr. Baxter's salary relative thereto, and testimony that others within Mr. Baxter's company earned more than he did as CEO/President of American, Inc. ("American"). Evidence was also presented at trial about Mr. Baxter's employment potential given his work history and job qualifications, including 30 years of experience in the alarm business.
 {¶ 9} We note that Mr. Baxter asserts that the magistrate never expressly found Mr. Baxter to be underemployed. We find this argument to be without merit. A court may impliedly find a party underemployed where a court references a consideration specifically within the child support statutes in making its determination. Wheeler v. Wheeler, 6th Dist. No. OT-04-025, 2005-Ohio-1025, at ¶ 27. The trial court's analysis as set forth in the Final Order demonstrates that the trial court impliedly found Mr. Baxter to be voluntarily underemployed.
 {¶ 10} As to the amount of income imputed to Mr. Baxter, R.C.3119.01(C)(5) defines "income" as either of the following:
 "(a) For a parent who is employed to full capacity, the gross income of the parent;
 "(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent."
 {¶ 11} When determining a reasonable amount of income to impute to an unemployed/underemployed parent, the trial court is directed to determine what the parent would have earned if fully employed based upon a consideration of the following criteria set forth in R.C.3119.01(C)(11)(a):
 "(i) The parent's prior employment experience;
 "(ii) The parent's education;
 "(iii) The parent's physical and mental disabilities, if any;
 "(iv) The availability of employment in the geographic area in which the parent resides;
 "(v) The prevailing wage and salary levels in the geographic area in which the parent resides;
 "(vi) The parent's special skills and training; "(vii) Whether there is evidence that the parent has the ability to earn the imputed income;
 "(viii) The age and special needs of the child for whom child support is being calculated under this section;
 "(ix) The parent's increased earning capacity because of experience;
 "(x) Any other relevant factor." Bain v. McFadden, 9th Dist. No. 22902, 2006-Ohio-4975 at ¶ 19.
 {¶ 12} In addition to the evidence discussed above relative to Mr. Baxter's job experience and qualifications and prevailing wage and salary levels, the trial court considered the needs of Michael, a stipulated Castle child, and what was required to take care of him. The trial court noted that Michael could not be left alone for more than one hour and cannot always make it through his half-day school program, requiring Ms. Collette to stay home with him and preventing her from obtaining employment. There was further evidence presented of the significant costs related to Michael's medical care, which will be more fully discussed relative to other assignments of error below.
 {¶ 13} Finally, the magistrate and trial court considered other relevant factors. Mr. Baxter receives fringe benefits in addition to salary from American, and represented to a financial institution, via financial statements, that the net worth of his business was $6,500,000 while his personal net worth was $6,999,613. In fact, Mr. Baxter borrowed $1,400,000 from that bank on January 15, 2002, based on these financial statements, to purchase a business in Columbus, and made a $400,000 down payment therefore. Mr. Baxter sold the first company he purchased in 1987 for $2,800,000, netting over $2.0 million in profits, and earned a consulting fee of $150,000 per year for a period thereafter. Finally, Mr. Baxter borrowed $780,000 one month before trial to build a house on a $150,000 lot he already owned.
 {¶ 14} The trial court's decision is reasonable and supported by the record. Consequently, we find no abuse of discretion in the trial court is impliedly finding Mr. Baxter voluntarily underemployed and in imputing $175,000 per year in income to him. Mr. Baxter's first assignment of error is overruled.
 Assignment of Error Number Two "The trial court erred in deviating upward for expenses for the child which were not even being incurred at the time [Ms. Collette's] motion was filed."
 {¶ 15} Mr. Baxter asserts that the trial court erred in deviating upward from the child support guidelines and ordering Mr. Baxter to pay for education, medical treatment and therapies that Michael regularly receives before the expense had actually been incurred.
 {¶ 16} We first note that Ms. Collette has asserted that Mr. Baxter has waived his right to assign this error by not properly objecting to the Magistrate's Decision. We disagree. Mr. Baxter objected to the upward deviation and to the nature and method of payment of Michael's medical expenses. This is sufficient to preserve this assignment of error on appeal.
 {¶ 17} A trial court possesses broad discretion in its determination regarding a modification of child support obligations. Pauly v.Pauly (1997), 80 Ohio St.3d 386, 390, 686 N.E.2d 1108, citing Booth v.Booth (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. Accordingly, an appellate court will not disturb such determinations absent an abuse of discretion. Pauly, 80 Ohio St.3d at 390, citing Booth,44 Ohio St.3d at 144.
 {¶ 18} The basic child support schedule is codified at R.C. 3119.021; the schedule reveals the child support obligation, based upon the combined gross income of the parents. R.C. 3119.022 outlines the content and form for the child support computation worksheet applicable to situations where one parent is the residential parent or where the parties have shared parenting. The amount of child support calculated pursuant to the basic child support schedule and applicable worksheet is "rebuttably presumed" to be the correct amount of child support due. R.C. 3119.03.
 {¶ 19} Despite this presumption, the trial court may order child support in an amount that deviates from the calculation obtained from the schedule and worksheet. R.C. 3119.24(A)(1). See, also, R.C. 3119.22. The deviation is permitted if the trial court determines that the "amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in [R.C. 3119.23.]" R.C. 3119.24(A)(1). "`Extraordinary circumstances of the parents'" include:
 "(1) The amount of time the children spend with each parent;
 "(2) The ability of each parent to maintain adequate housing for the children;
 "(3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant;
 "(4) Any other circumstances the court considers relevant." R.C. 3119.24(B).
 {¶ 20} R.C. 3119.23 provides a list of the statutory criteria a trial court may consider when determining whether to deviate from the child support schedule. This section provides:
 "(A) Special and unusual needs of the children;
 "(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;
 "(C) Other court-ordered payments;
 "(D) Extended parenting time or extraordinary costs associated with parenting time, provided that [R.C. 3119.23] does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;
 "(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;
 "(F) The financial resources and the earning ability of the child; "(G) Disparity in income between parties or households;
 "(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;
 "(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;
 "(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
 "(K) The relative financial resources, other assets and resources, and needs of each parent;
 "(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;
 "(M) The physical and emotional condition and needs of the child;
 "(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;
 "(O) The responsibility of each parent for the support of others;
 "(P) Any other relevant factor." R.C. 3119.23.
 {¶ 21} The trial court found that "plaintiff's efforts to secure medical and other services for Michael to meet his medical, educational, vocational, and social needs have been reasonable and appropriate and done so in the best interests of Michael's welfare." In making this decision, the court noted that Michael's condition requires full time care, including occupational, speech and physical therapy and that these expenses are ongoing and noted that each of these expenses had been properly documented before the magistrate. The court further noted that if the parties had remained married, Michael would have had these therapies and programs and a heightened standard of living, noting the value of Mr. Baxter's business and his expensive lifestyle. Ms. Collette is the primary caregiver and because of Michael's condition cannot obtain employment. At the time of trial, Mr. Baxter had little or no involvement with Michael's medical and educational needs and had not spent much time with him. Finally, the trial court found that Mr. Baxter had failed to reimburse Ms. Collette for his share of Michael's medical expenses since December, 2000.
 {¶ 22} Courts may consider the ongoing needs of a child to deviate from the child support guidelines where it is in the best interest of the child to do so. Kitchen v. Kitchen, 12th Dist. No. CA-2002-12-298,2004-Ohio-1189, at ¶ 14-16. We note that this case is different from our decision in Bertholet v. Bertholet (2003), 154 Ohio App.3d 101,796 N.E.2d 541. Bertholet dealt with the timing of the motion to modify child support vis- à -vis income of the parties, not regular and continuing expenses of a special needs child.
 {¶ 23} Given the above, we cannot say the trial court abused its discretion by deviating upward from the child support guidelines to include an amount representing payment of Michael's ongoing medical needs even where the expense had not yet been incurred.[1] Mr. Baxter's second assignment of error is overruled.
 Assignment of Error Number Three "The trial court erred in deviating upward for expenses for the child for medical/therapy expenses while simultaneously suggesting that [Ms. Collette] file a motion with the court for reimbursement of those same unpaid out-of-pocket expenses."
 {¶ 24} Mr. Baxter's third assignment of error asserts that the trial court deviated upward from the child support guidelines to cover Michael's medical and therapy expenses while at the same time advising Ms. Collette to seek reimbursement for unpaid out of pocket expenses. However, in the law and argument section of Mr. Baxter's third assignment of error, he asserts virtually the same argument as set forth in assignment of error number two. Mr. Baxter asserts that the trial court ordered him to pay an additional $634 per month, an upward deviation from the child support guidelines, for Michael's medical and therapy expenses even where these expenses have not yet been incurred. We have addressed this argument in our discussion of Mr. Baxter's second assignment of error.
 {¶ 25} To the extent this assignment is attempting to make a new argument, "[i]t is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v.Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. Defendant has completely failed to meet his burden and has pointed the court to nothing in the record to support this assignment of error.
 {¶ 26} Notwithstanding the above, we note that the Final Order does instruct Ms. Collette to "file an appropriate motion with the court should she desire reimbursement from Defendant for unpaid out-of-pocket expenses incurred for the benefit of Michael which he has failed to pay his share of since December 2000." Assuming this is the "suggestion" to which Mr. Baxter refers in this assignment, we find the trial court did not abuse its discretion in so suggesting. Initially, we note that the upward deviation from the child support guidelines for Michael's ongoing education/therapy/medical needs as discussed in assignment of error two relates to future expenses. The court's "suggestion" relates to past expenses. Moreover, by suggesting to Ms. Collette that she file a motion seeking reimbursement of past unpaid medical expenses, the court did not suggest it would grant such a motion. Any motion would require independent legal review per the court's usual procedures when it considers such motions.
 {¶ 27} Mr. Baxter's third assignment of error is overruled.
 Assignment of Error Four "The trial court erred in ordering three equal installments on arrears without considering additional evidence"
 {¶ 28} Mr. Baxter asserts that because nearly 13 months passed between the date of the trial in this matter until the date of the Magistrate's Decision, that he was entitled to a hearing so he could present evidence that he was no longer able to afford to pay the child support arrearage in three equal installments payable quarterly.
 {¶ 29} On April 15, 2004, Mr. Baxter requested a hearing on the issue that is the subject of this assignment of error in a motion entitled Motion for Oral Hearing; Reconsideration of Interim Order; and Reply to Plaintiff's Motion for Extension of Interim Order (the "Arrearage Motion"). On February 8, 2005, Mr. Baxter filed the Nunc Pro Tunc Motion requesting the trial court to dispose of the Arrearage Motion and other pending motions so as to allow him another appeal of the Original Order. On April 26, 2005, the trial court issued the Final Order complying with Mr. Baxter's request and denying all pending motions. Mr. Baxter asserts that the trial court's denial of the Arrearage Motion as set forth in the Final Order was improper.
 {¶ 30} Initially, we note that Mr. Baxter expressly requested that the court dispose of the Arrearage Motion so as to allow him to appeal the Original Order a second time, the first appeal being dismissed as untimely filed. The Nunc Pro Tunc Motion was filed so as to give Mr. Baxter another bite at the apple and now Mr. Baxter complains because the trial court did as he asked, i.e., "disposed" of pending motions giving Mr. Baxter a new final appealable order he could bring to this Court. As noted above the Original Order and Final Order are identical except for one sentence denying all pending motions, which denial includes the Arrearage Motion.
 {¶ 31} Despite Mr. Baxter's questionable procedural tactics, "[a]n interim order is generally not a final, appealable order." In ReEmergency Guardianship of Stevenson, 9th Dist. No. 04CA0036-M,2005-Ohio-997, at ¶ 8, citing Brown v. Cummins (1997),120 Ohio App.3d 554, 556, 698 N.E.2d 501; Barker v. Barker (1997), 118 Ohio App.3d 706,713, 693 N.E.2d 1164. The exception to this rule is where a substantial right has been affected in a special proceeding. Mr. Baxter has never made this argument. Accordingly, we cannot and will not separately review the propriety of the trial court's denial of the Arrearage Motion.
 {¶ 32} As to the propriety of the Final Order, on February 3, 2004, the Magistrate's Decision was filed. Mr. Baxter objected to Magistrate's Decision, asserting the same argument he asserts here. However, at no time, did Mr. Baxter provide the trial court with any evidence of his changed financial circumstances as is permitted by Civ. R. 53(E)(4)(b), which states in relevant part that the "court shall rule on any objections the court may adopt, reject, or modify the magistrate's decision, hear additional evidence, [or] recommit the matter to the magistrate with instructions[.]" We note that Mr. Baxter asserts that his financial circumstances have changed during the long time period between the Magistrate's Decision and the Final Order and thus, a financial affidavit filed so soon after the Magistrate's Decision as part of Mr. Baxter's objections probably would not have been reflected in the changed circumstances that Mr. Baxter asserts exist.
 {¶ 33} Notwithstanding, we find that the trial court did not abuse its discretion in ordering Mr. Baxter, without a hearing, to pay the arrearage in three monthly installments, payable quarterly. Mr. Baxter's financial status and activities have been analyzed thoroughly below and by this Court. Given our review of the record as discussed in our review of Mr. Baxter's first, second and third assignments of error, Mr. Baxter was more than capable of paying the arrearage as ordered at the time of the trial and if his circumstances changed so as to make it financially impossible[2] for him to comply, it was likely due to the lifestyle that Mr. Baxter was living, which lifestyle was established at trial. Mr. Baxter's fourth assignment of error is denied.
 Assignment of Error Five "The trial court erred in ordering [Mr. Baxter] to pay [Ms. Collette] for support of the adult disabled child when there is no provision that [Ms. Collette] is the custodial parent."
 {¶ 34} Mr. Baxter asserts that while he has stipulated that Michael is a Castle child, the Castle case, and its codification, as set forth in R.C. 3119.86(A)(1)(a) does not address what court has continuing jurisdiction over the custody of a Castle child. Thus, says Mr. Baxter, there is no provision regarding to whom support should be paid where there is no custodial parent. Mr. Baxter argues that the support should be paid directly to Michael as the Final Order makes no finding that Ms. Collette is the custodial parent of Michael. This would allow the Probate Court to monitor how the support is spent and ensure that it is spent on Michael.
 {¶ 35} Civ.R. 53(E)(3)(a) provides in part as follows: "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, regardless of whether the court has adopted the decision pursuant to Civ.R. 53(E)(4)(c)." Additionally, Civ.R. 53(E)(3)(d) states: "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
 {¶ 36} Mr. Baxter failed to object to the magistrate's findings of fact to assert an objection that support for Michael, a Castle child, should not be paid to Ms. Collette as she had not been established as the custodial parent of Michael. Consequently, Mr. Baxter has waived any error in the trial court's adoption of the Magistrate's Decision by failing to object to the magistrate's findings. Civ.R. 53(E)(3)(d). Mr. Baxter fifth assignment of error is overruled.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
LYNN C. SLABY FOR THE COURT BOYLE, J. CONCURS
CARR, J., CONCURS IN JUDGMENT ONLY
 APPEARANCES:
JOHN M. DOHNER, Attorney at Law, for Appellant.
JOHN E. SCHOONOVER, Attorney at Law, for Appellee.
[1] During oral argument, Mr. Baxter asserted for the first time that the trial court's mathematical calculations vis- à -vis the child support and upward deviation were in error. Mr. Baxter did not make this argument in his appellate brief and pursuant to App. R. 12(A)(2), we decline to address it.
[2] We note that Mr. Baxter asserted at oral argument that it was impossible for him to comply with the trial court's order to pay the arrearage because the original payment dates of March 31, 2004, June 1, 2004 and October 1, 2004 had already passed at the time of the Final Order. This argument was not made in Appellant's brief and pursuant to App. R. 12(A)(2), we will disregard it.